```
              IN THE UNITED STATES DISTRICT COURT FOR THE

                          DISTRICT OF NEBRASKA

DUANE L. HARTMAN and DLH,    )
Inc., a Nebraska corporation,)
d/b/a COACHES SPORTS BAR &   )
GRILL,                       )
                             )
               Plaintiffs,   )           8:04CV393
                             )
          v.                 )
                             )
BOB WORKMAN, LINDA STEINMAN, )           MEMORANDUM OPINION
LARRY HUDKINS, BERNIE HEIER, )
and KATHY CAMPBELL, all in   )
their individual and         )
official capacities as       )
members, or former members, of)
the Board of Commissioners of)
Lancaster County, Nebraska,  )
and RAY STEVENS and DEB      )
SCHORR, in their official    )
capacities as current members)
of the Lancaster County Board)
of Commissioners; and        )
LANCASTER COUNTY, NEBRASKA,  )
                             )
               Defendants.   )
_____)
```

This matter is before the Court following a non-jury trial held on November 30, 2005. Evidence was adduced by both parties and post-trial closing arguments have been submitted by both plaintiffs and defendants (See Filing Nos. 53 and 54). After consideration of the evidence, the trial briefs and the closing arguments, the Court makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 56.

This action was filed pursuant to 42 U.S.C. §§ 1983 and 1985 and Article I, § 3 of the Nebraska Constitution, alleging that Lancaster County and named individual members of the Lancaster County Board of Commissioners, Bob Workman, Linda

Steinman, Larry Hudkins, Bernie Heier, Kathy Campbell, Ray Stevens and Deb Schorr violated their constitutional rights.[1]

## I. Background

On December 16, 1980, the Lancaster County Board of Commissioners ("County Board") passed Resolution 3557 which purported to empower the County Board to revoke or suspend retail liquor licenses under the jurisdiction of the County Board for violations of Resolution 3557.  Among other things, Resolution 3557 purported to implement a prohibition on any live person appearing in a state of nudity in premises with a liquor license, either in person or in a movie, film, television, video tape or slide presentation.  Resolution 3557 defined "nudity" to mean "the showing of the human male or female genitals, pubic area or buttocks or the human female breast including the nipple or any portion of the breast below the nipple with less than a full opaque covering."  (Exhibit 1).

Plaintiffs are Duane L. Hartman ("Hartman") and DLH, Inc. ("DLH"), a Nebraska Corporation owned by Hartman.  DLH did business as Coaches Sports Bar and Grill ("Coaches") at 640 West Prospector Court, just outside the city limits of Lincoln, Nebraska, in Lancaster County (Amended Complaint, §§ 5-6).  Coaches occupied the east end of a building owned by Duane

---

[1] The original and amended complaints (Filing Nos. 1 and 22) sued both current and former members of the Lancaster County Board of Commissioners who served during the relevant times alleged in plaintiffs' complaint.  They were sued in both their individual and official capacities and were subsequently dismissed in their individual capacities (Filing No. 31).

-2-

Hartman Investments, another venture owned by Hartman. DLH possessed a class M liquor license, number M40158, that covered both the east end of the building occupied by Coaches as well as a vacant middle section of the property that adjoined Coaches. The western third of the building was occupied by a convenience store.

In early 2000, DTR, Inc. ("DTR"), a Nebraska corporation, proposed to open a new business, to be known as Cheetah's Gentleman's Club ("Cheetah's") in the center portion of the property adjacent to Coaches (Ex. 14). It was proposed that Cheetah's business would include both the sale of alcohol and "adult entertainment" consisting of nude and partially clothed female dancers (Ex. 14). DTR was owned and operated by Daniel Robinson (Ex. 14). DTR applied for a liquor license for the Cheetah's location. At the time of the DTR application, the DLH class M liquor license already encompassed the space to be occupied by Cheetah's (Ex. 14).

At approximately the same time as DTR sought a liquor license for Cheetah's, DLH sought to have the Cheetah's space delisted from its current liquor license (Ex. 2). Pursuant to state law, on August 1, 2000, the County Board held a hearing on DLH's application to delete the center portion of the subject property from its existing liquor license (Ex. 8). At the hearing, it was explained that DLH was asking to delete the Cheetah's location from its license so that DTR could proceed in its attempt to obtain a liquor license for the same space because

state law does not allow for a specific property to be subject to two different liquor licenses.  Thus, before DTR could obtain a license for the property, it was necessary that the property no longer be covered by the DLH license.  The County Board recommended denial of DLH's application to delete the Cheetah's property from its license (Ex. 7).

As an alternative, DLH submitted a separate application for a new liquor license, number M49366, to cover only the space occupied by Coaches.  On July 19, 2000, DLH was notified that the County Board would hold a public hearing on its new license application.  The hearing took place on August 16, 2000.  Following the hearing, the County Board recommended denial of this new license application (Ex. 34).

While the application and appeal procedures were continuing on DLH's application to delete part of the premises, DLH's original liquor license for Coaches came up for renewal in February, 2001.  This license was eligible for "automatic renewal."  Neb. Rev. Stat. § 53-135.  State law requires the local governing body publish notices of liquor licenses that are subject to automatic renewal.  Neb. Rev. Stat. § 53-135.01.  State law further provides that if the local governing body receives three or more protests against the automatic renewal of a liquor license, a public hearing must be held to determine whether the license should be renewed.  Neb. Rev. Stat. § 53-135.01.

On February 21, 2001, after receiving more than three protests, the County Board scheduled a public hearing on the license renewal for March 6, 2001. At the March 6th hearing, witnesses appeared and testified and documents both in support of and in opposition to automatic renewal of the license were received (Ex. 37-38). At the conclusion of the hearing, the County Board voted to request that the plaintiffs submit a new long form application (Ex. 38). The plaintiffs complied, submitting its long form application on March 22, 2001 (Ex. 39).

Pursuant to Neb. Rev. Stat. § 53-135, the County Board scheduled a hearing on the long form application which took place on April 17, 2001 (Ex. 42). At this hearing, several witnesses testified, and documentary evidence both in support and in opposition to the application was received. At the conclusion of the hearing, the County Board voted to recommend denial of the application (Ex. 111).

Two days later, on April 19, 2001, the Nebraska State Liquor Commission ("Liquor Commission") held hearings on two DLH applications. The first was DLH's August, 2000, application for a new license to cover only the reduced space occupied by Coaches and deleting the space occupied by Cheetah's (See Ex. 10). The second application was the long form renewal application for DLH's original license. The County Board had recommended denial of both applications. At the conclusion of the hearing on the first matter -- the reduced space application -- the Liquor Commission voted to approve the deletion of the Cheetah's space

-5-

from the DLH license (Ex. 44, No. C100-1558, pp. 1-29).  Next, the Liquor Commission held a hearing on DLH's "long form" application for renewal of its original license.  At the conclusion of this hearing, the Liquor Commission voted to deny the long form application in lieu of renewal of the existing license (Ex. 44, No. C100-1559, pp. 1-67).  However, at this point, a discussion ensued regarding the understandings of the various parties regarding the effect of the Commission's two decisions.  After the discussions, the Commission went back on the record and clarified that its decision on the long form application also applied to the portion of the property which was deleted in the earlier action (Ex. 44, No. C100-1558, pp. 29-39, No. C100-1559, pp. 67-80).  Thus, the final result was that DLH was left without a license for any portion of the subject property.  Orders to this effect were issued on April 25, 2001 (Ex. 45-46).

Pursuant to state law, the plaintiffs immediately appealed the decision of the Liquor Commission to the District Court of Lancaster County (Ex. 47-48).  During the pendency of this appeal, the plaintiffs were allowed to continue to operate under their original license because the District Court entered a stay on April 26, 2001, precluding the Commission from taking any actions to enforce the terms of the Commission's April 25, 2001, order (Ex. 49).

On February 1, 2002, the District Court of Lancaster County entered an order directing the Liquor Commission to issue

and renew DLH's liquor license (Ex. 51).  A mandate was subsequently issued (Ex. 52).  Pursuant to the mandate, on April 19, 2002, the liquor license was delivered to DLH (Ex. 54).

The District Court's ruling was appealed to the Nebraska Supreme Court which affirmed his decision, determining that resolution 3557 was not a valid regulation bearing upon the sale and distribution of alcohol in the state of Nebraska (Ex. 63, *DLH, Inc. v. Lancaster County Bd. of Comm'rs*, 264 Neb. 358; 648 N.W.2d 277(2002)).

The plaintiffs filed their initial complaint in this action on August 20, 2004 (Filing No. 1).  Plaintiffs filed their amended complaint on March 11, 2005 (Filing No. 22).

## II.  Analysis

### A.  Due Process Claim

Plaintiffs' first and third causes of action allege a deprivation of property under the fifth and fourteenth amendments to the United States Constitution as well as under Article I, § 3 of the Nebraska constitution.  The language of Article I, § 3, is identical to that of the fourteenth amendment and a due process claim under the Nebraska constitution is treated the same as a fourteenth amendment claim under the United States Constitution. *Rushton v. Nebraska Public Power Dist.*, 653 F. Supp. 1510, 1528-29 (D. Neb. 1987), *aff'd*, 844 F.2d 562 (8th Cir. 1988).  To state a due process claim in this case, it is necessary for the plaintiff to establish a constitutional deprivation of property. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  It is first

necessary for the plaintiffs to identify the property that the plaintiffs allege they was deprived of by the defendants' actions.  Here, plaintiffs allege two deprivations.  First, plaintiffs allege that they were deprived of their liquor license.  Second, plaintiffs allege that they were deprived of a protectable property interest because of the costs and expenses incurred in attending and preparing for the numerous hearings and proceedings involved in attempting to retain their liquor license for Coaches.

### Liquor License

It is uncontroverted that DLH possessed a protectable property interest in its liquor license.  *Pump & Pantry, Inc. v. Grand Island*, 233 Neb. 191, 197-98, 444 N.W.2d 312, 316-17(1988).  As such, the deprivation of DLH's liquor license would be sufficient to state a deprivation of property for due process purposes.  But, in the present case DLH was never deprived of its liquor license and operated continuously during the entire pendency of this controversy.  Not having been deprived of its license, DLH cannot state a claim of deprivation based upon loss of its liquor license.

Even if DLH had been deprived of its liquor license, the deprivation would occur based on the actions of the Liquor Commission, rather than the named defendants.  The actions of the defendants were merely advisory with the final decision belonging to the Liquor Commission.

Costs and Expenses Incurred in Defending License

Next, plaintiffs contend that the costs and expenses they incurred in defending the liquor license are sufficient to constitute a protectable property interest.  In *Reichenberger*, the Seventh Circuit held that legal fees incurred by a plaintiff in administrative proceedings "cannot qualify as a constitutional injury absent a showing of deprivation of a constitutional magnitude."  *Reichenberger v. Pritchard*, 660 F.2d 280, 285 (7th Cir. 1981).  In *Reichenberger*, the court found that where a bar continued to operate during the entirety of proceedings, never having to curtail the nude dancing for which it was being challenged and never having its liquor license revoked, an injury consisting solely of the costs and expenses incurred in defending itself did not qualify as an injury of a constitutional magnitude.  *Id*.  As in *Reichenberger*, the plaintiffs' costs and expenses incurred in defending its liquor license do not constitute an injury of constitutional magnitude.  Plaintiffs' first and third causes of action fail because the plaintiffs have failed to establish a deprivation of property sufficient to state a due process claim under either the United States or Nebraska Constitutions.

**B.   Conspiracy**

Plaintiffs' second cause of action alleges a conspiracy involving the defendants under 42 U.S.C. § 1985(3) to impede the plaintiffs' business by depriving the plaintiffs of the equal protection of the laws.  To state an equal protection claim under

§ 1985(3), "a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving another of the 'equal protection of the laws, or of equal privileges and immunity under the law;' (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a legal right." *Federer v. Gephardt,* 363 F.3d 754, 757-58 (8th Cir. 2004). A claim under this provision also requires proof of a "class-based, invidiously discriminatory animus behind the conspirators' actions." *Federer*, 363 F.3d at 758, n.3. Here, the amended complaint does not allege the existence of any class-based animus. Furthermore, no evidence was produced that the defendants held any animus toward any group of which the plaintiffs were members. Nor was any evidence produced to support an assertion that the defendants' actions were in any way motivated by a class-based animus directed toward the plaintiffs. Plaintiffs' equal protection claim under § 1985(3) fails as a matter of law.

### III.  Conclusion

The Court finds that plaintiffs have failed to prove that defendants violated their rights arising under either 42 U.S.C. §§ 1983 and 1985 or Article I, § 3 of the Nebraska Constitution and judgment will be entered in favor the defendants

on all claims.  A separate order in accordance with this memorandum opinion will be entered this date.

    DATED this 17th day of January, 2006.

                  BY THE COURT:

                  /s/ Lyle E. Strom
                  _____
                    LYLE E. STROM, Senior Judge
                    United States District Court